EDMUND P. GAINES, AND MIRA CLARKE, LATE WHITNEY, COMPLAINANTS, *vs.* RICHARD RELF, BEVERLY CHEW, AND OTHERS, DEFENDANTS.

In the case of Livingston *v.* Story, which came before this Court, in 1835, (9 Peters, 655,) the Court took occasion to examine the various laws of the United States, establishing and organizing the District Court of Louisiana, and to decide whether that Court had equity powers; and if so, what should be the mode of proceeding in the exercise of such powers. The various cases which had been before the Court, involving, substantially, the same question in relation to the states where there were no equity State Courts, or laws regulating the practice in equity causes, were referred to; and the uniform decisions of the Court have been, that there being no equity State Courts, did not prevent the exercise of equity jurisdiction in the Courts of the United States; and it was, accordingly, decided, that the District Court of Louisiana was bound to proceed in equity causes, according to the principles, rules, and usages which belong to the Courts of equity, as contradistinguished from Courts of common law.

The cases of Livingston *v.* Story, 9 Peters, 655. 13 Peters, 368. Ex parte Poultney *v.* The City of La Fayette, 13 Peters, 474. Ex parte Mira Clarke Whitney, 13 Peters, 404. cited; and the principles of these cases affirmed.

The Supreme Court has not the power to compel the Circuit Court to proceed according to established rules in chancery cases. All that the Court can do, is to prevent proceedings otherwise, by reversing them, when brought here on appeal.

It is a matter of extreme regret, that it appears to be the settled determination of the District Judge of Louisiana, not to suffer chancery practice to prevail in the Circuit Court of Louisiana in equity causes, in total disregard of the repeated decisions of this Court, and the rules of practice established by the Supreme Court, to be observed in chancery cases.

ON a certificate of division from the Circuit Court of the United States, for the Eastern District of Louisiana.

A bill of complaint was originally filed in the District Court of the United States for the Eastern District of Louisiana; and was afterwards transferred to the Circuit Court for the same District.

Subpœnas were issued on the 1st of August, 1836, with a copy of the bill, to each and all the defendants, about fifty in number. Service of this process was made by the marshal, on twenty-seven of the defendants, and amongst them, on Richard Relf. W. W. Whitney, one of the plaintiffs, having deceased, the proceeding was continued in the name of Mira Clarke Whit-

ney, his widow. The bill claimed the estate left by Daniel Clarke, at the time of his death; alleging that Mira Clarke Whitney was his only child, and heir at law, and his devisee.

The bill charged Beverly Chew and Richard Relf, with having fraudulently concealed and suppressed Daniel Clarke's true and last will, in which the complainant, his daughter and heir at law, was his only devisee, and was his general legatee; with having set up another will, in which they were named executors, and with having taken and appropriated all the estate, real and personal, of Daniel Clarke. The other defendants are charged with confederating with the executors; and with having obtained, and still holding large portions of the estate, through the executors or under them.

The bill contains an inventory of the estate of Daniel Clarke, as far as can be made out. For these frauds and breaches of trust the bill claims restitution, &c.

On the 20th February, 1837, (about two months after subpœnas were returned, served,) the two executors, with twenty-five of their co-defendants, appeared by their respective solicitors, and filed a petition: wherein, styling themselves respondents, eleven of them say, French is their "mother tongue," (not that they do not understand English as well;) and pray, as a precedent condition to their being held to plead, answer, or demur to the bill, that a copy, in their "maternal language," be served on each and every of them, severally, over and above the English copies already served. Then, "all the aforesaid respondents, (including, of course, the two executors,) here appearing separately by their respective solicitors, crave oyer" of all the instruments and papers of every sort mentioned in the bill; but, "if it be not possible for said complainants to afford these respondents oyer of the originals of said supposed instruments, they then pray that copies of the same, duly certified according to the laws of the state of Louisiana, may, by order of this honourable Court to said complainants, be filed herein, and served on these respondents, that they may be enabled to take proper cognisance thereof." The respondents more especially crave oyer of twenty-three of these instruments, enumerated and specified in a list, referring to the several clauses of the bill where they are respectively mentioned.

No answer having been put in by the twenty-five respondents,

a motion was made for an attachment, which was refused by Judge Lawrence, the District Judge, sitting as a judge of the Circuit Court, to which the proceedings were transferred after the establishment of a Circuit Court in the eastern district of Louisiana.

At the same time Judge Lawrence, sitting alone in the Circuit Court, prescribed rules of practice for that Court; among which was a general one, that "the mode of proceeding in all civil cases, those of admiralty alone excepted, shall be conformable to the Code of Practice of Louisiana, and to the acts of the Legislature of that state, heretofore passed, amendatory thereto."

The complainant applied to the Supreme Court, at January term, 1839, for a mandamus to Judge Lawrence, in order to compel him to proceed in the case.   13 Peters, 408.

The mandamus so applied for was denied, for reasons appearing in the Court's opinion; but the Court, at the same time, expressly declared, though the remedy by mandamus be inadmissible, that it is the duty of the Circuit Court to proceed in this suit, according to the rules prescribed by the Supreme Court, at the February term, 1822, can admit of no doubt; and that the proceedings of the District Judge, and the orders made by him in the cause, which are complained of, are not in conformity with those rules of chancery practice, can admit of as little doubt. 13 Peters, 408.

Since then, the present complainants, (having intermarried,) filed a petition for rehearing the before stated order, by a bill filed in the Circuit Court on the 1st of June, 1839.

The petition stated that the complainants were much aggrieved by the interlocutory decree made in the case by the former District Judge for the eastern district of Louisiana; whereby it is ordered that the application of the defendants for oyer of documents, and for copies of the bill of complaint be allowed : and further, that all further proceedings in the case shall be in conformity with the existing practice of the Court.

On June 1, 1839, in the Circuit Court, before the honourable Judges M'Kinley and Lawrence, the counsel for the complainants moved the Court,

1st. To set aside and vacate said decretal order.

2d. To remand the said cause to the rule docket, and order

that the complainants should be permitted to proceed therein according to chancery practice. The defendants appeared by their counsel, and resisted said application and motion, upon the ground that chancery practice should not be had in this Court, and they relied upon the treaty of cession of Louisiana to the United States, from France, in 1803; the acts of Congress of 29th September, 1789; 26th May, 1824; the 19th May, 1828; and 20th May, 1830; and the first rule adopted by this Court, of 20th November, 1837.

The judges of the Circuit Court having differed in opinion on the hearing of the motion, it was ordered to be certified to the Supreme Court for its decision upon the following questions:

1st. Does chancery practice prevail, and should it be extended to litigants in this Court, and in this cause?

2d. Should or not the said order of the date of 9th March, 1837, be annulled and vacated?

3d. Should or not the cause be placed upon a rule docket, and the complainants be permitted to proceed according to chancery practice, and the defendants be required to answer without oyer of the documents prayed for, or a service of the bill in French, as prayed for?

And the cause coming on to be heard, by consent of parties, upon the demurrer, and upon the adjudication thereof, the judges were opposed in their opinions, and the foregoing questions were ordered to be certified to the Supreme Court of the United States for its decision and adjudication.

The case was argued by Mr. Key, and Mr. Jones, for the plaintiffs; and by Mr. Coxe, for the defendant.

The counsel for the plaintiffs contended that the single question in the case was, whether the Circuit Court of Louisiana has chancery jurisdiction. The argument that the case is not one for chancery jurisdiction, does not apply. The question whether the case of the complainants is, or is not one of chancery cognisance, is not before the Court on the certificate of division. No provision of the Code of Louisiana, gives chancery jurisdiction to the Courts of that state. Chancery law as administered in the Courts of the United States, is a fixed code of

laws; and depends on established rules and decided cases. The Courts of equity are of a peculiar form. The Code of Louisiana gives a judge in certain cases a right to proceed according to the principles of natural justice; but this gives no chancery powers.

They contended that the case exhibited in the complainants' bill, was one peculiarly of chancery jurisdiction. It is a beneficial bill, and should have the protection of the Court. Cited, Brown's Parliamentary Cases, 550. Dickens' Reports, 26. 2 Vesey and Beame, 259. But the chancery jurisdiction of the Circuit Court has been fully recognised in the case of Livingston *v.* Story, 9 Peters, 655. 12 Peters, 474. 3 Peters, 368. 404. The rules of Court regulating the practice of the Circuit Court, show that the call for papers as made by the defendant, is not allowed. 10 Rule of Court. 3 Dallas, 335. 339. The rules of practice in the Civil Code of Louisiana, do not sanction such a call for papers.

Mr. Coxe argued that the case exhibited in the bill was not one of chancery jurisdiction; nor is a proceeding to vacate a will, in the power of a Chancery Court. Cases cited, 13 Peters, 369. 9 Peters, 657. 12 Wheaton, 169. 175. 1 Williams on Executors, 157. Cowper's Equity Pleading, 268. 2 Story's Equity, 670. Mr. Coxe referred to the Louisiana Code, to show that the Probate Court was the proper tribunal to set aside the will. So, too, the code authorizes proceedings in the established Courts of Louisiana to recover legacies.

It was not his intention to controvert the decisions of the Court; but such a case as this had not yet been decided.

Mr. Justice THOMPSON delivered the opinion of the Court.

This case comes up from the Circuit Court of the United States, for the Eastern District of Louisiana, upon a certificate of division of opinion upon the following points :

1. Does chancery practice prevail, and should it be extended to litigants in this Court, and in this cause ?

2. Should or not the said order of the 9th of March, 1837, be annulled and vacated?

3. Should or not the cause be placed upon a rule docket, and the complainants be permitted to proceed according to the chan-

cery practice; and the defendants be required to answer without oyer of the documents prayed for, or a service of the bill in French, as prayed for?

This was a bill filed in the District Court of the United States, for that district, on the 28th of July, 1836, according to the course of practice in the Courts of the United States, upon the equity side of the Court; and in the course of proceeding, the district judge, on the 9th of March, 1837, entered the following order: "W. W. Whitney and wife *vs.* Richard Relf and others. In this case having maturely considered the prayer for oyer, and for copies of bill in French, the Court this day delivered its written opinion thereon, whereby it is ordered, adjudged, and decreed, that the application for oyer of documents, and for copies of the bill of complaint, in the manner prayed for, (in French,) be granted: and further, that all future proceedings in this case shall be in conformity with the existing practice of this Court."

At the June term of the Circuit Court, in the year 1839, a motion was made to set aside and vacate that order; and that the complainant might be permitted to proceed in the cause, according to the course of chancery practice. And upon this motion, the division of opinion upon the points above-stated, arose.

These points present the same question that has been repeatedly before this Court, and received its most deliberate consideration and judgment, viz., whether the proceedings in suits in equity, in the Courts of the United States, in the district of Louisiana, are required to be according to the course of chancery practice, and in conformity to that which is adopted and established in the other states. It is not intended to go into an examination of this question as one that is new and undecided, but barely to refer to the cases which have been heretofore decided by this Court. In the case of Livingston *v.* Story, which came before this Court, in the year 1835, 9 Peters, 655, the Court took occasion to examine the various laws of the United States establishing and organizing the District Court in Louisiana, and to decide whether that Court had equity powers, and if so, what should be the mode of proceeding in the exercise of such powers. The various cases which had been before the Court, involving substantially the same question, in relation to the states where

there were no equity State Courts, or laws regulating the practice in equity causes, were referred to; and the uniform decisions of this Court have been, that there being no equity State Courts did not prevent the exercise of equity jurisdiction in the Courts of the United States. And it was accordingly decided, that the District Court of Louisiana was bound to proceed in equity causes according to the principles, rules, and usages, which belong to Courts of Equity, as contradistinguished from Courts of common law; that the acts of Congress have distinguished between remedies at common law and in equity; and that to effectuate the purposes of the legislature, the remedies in the Courts of the United States are to be at common law, or in equity, not according to the practice of the State Courts, but according to the principles of common law and equity as distinguished and defined in that country from which we derived our knowledge of those principles; subject, of course, to such alterations as Congress might think proper to make. But that no act of Congress had been passed affecting this question. That the act of Congress of 1824 could have no application to the case, because there were no Courts of Equity or state laws in Louisiana, regulating the practice in equity cases. And again, in the same case of Story *v.* Livingston, which came before the Court in 1839, 13 Peters, 368, one of the exceptions taken to the master's report was, that by a rule of the District Court, chancery practice had been abolished; and that such a proceeding was unknown to the practice of the Court. This Court says, no such rule appears on the record. But we think the occasion a proper one to remark, that if any such rule has been made by the District Court of Louisiana, it is in violation of those rules which the Supreme Court of the United States has passed to regulate the practice in the Courts of Equity of the United States; that those rules are as obligatory upon the Courts of the United States in Louisiana, as upon all other United States Courts; and that the only modifications or additions that can be made in them, by the Circuit or District Courts, are such as shall not be inconsistent with the rules thus prescribed: and that where such rules do not apply, the practice of the Circuit and District Courts must be regulated by the practice of the Court of Chancery in England. That parties to suits in Louisiana have a right to the benefit of these rules; nor can they be denied by any rule or order, without

causing delays, producing unnecessary and oppressive expenses; and in the greater number of cases, an entire denial of equitable rights. That this Court has said, upon more than one occasion, after mature deliberation, that the Courts of the United States in Louisiana possess equity powers under the constitution and laws of the United States. That if there are any laws in Louisiana directing the mode of proceeding in equity causes, they are adopted by the act of the 26th of May, 1824, and will govern the practice of the Courts of the United States. But, as has been already said, there are no such laws in Louisiana, and, of course, the act cannot apply.

And in the case Ex parte Poultney *v.* The City of La Fayette, 12 Peters, 474, this Court said, the rules of chancery practice, in Louisiana, mean the rules prescribed by this Court for the government of the Courts of the United States, under the authority given by the act of the 8th of May, 1792.

And again; in the year 1839, in the case Ex parte Mira Clarke Whitney, 13 Peters, 404, application was made to this Court for a mandamus to compel the district judge to proceed in this case according to the course of chancery practice, upon a petition to the Court representing that he had refused so to do, but had entered an order that all further proceedings should be conformable to the provisions of the Code of Practice in Louisiana, and the acts of the legislature of that state. Upon this application, this Court again declared, that it is the duty of the Court to proceed in the suit according to the rules prescribed by the Supreme Court for proceedings in equity causes, at the February term, 1822. That the proceedings of the district judge, and the orders made by him in this cause, (the very order now in question,) were not in conformity with those rules, and with chancery practice; but that it was not a case in which a mandamus ought to issue, because the district judge was proceeding in the cause; and however irregular that proceeding might be, the appropriate redress, if any, is to be obtained by an appeal, after a final decree shall be made in the cause. That a writ of mandamus was not the appropriate remedy for any orders which may be made in a cause by a judge, in the exercise of his authority, although they may seem to bear harshly or oppressively upon the party.

[Gaines et al. *v.* Relf et al.]

Such are the views which have been heretofore taken by this Court upon the questions raised by the points which have been certified in the record before us; and which leave no doubt that they must all be answered in the affirmative. These questions having been so repeatedly decided by this Court, and the grounds upon which they rest so fully stated and published in the reports, that it is unnecessary, if not unfit, now to treat this as an open question. It is matter of extreme regret, that it appears to be the settled determination of the District Judge, not to suffer chancery practice to prevail in the Circuit Court in Louisiana, in equity causes; in total disregard of the repeated decisions of this Court, and the rules of practice established by the Supreme Court to be observed in chancery cases.

This Court, as has been heretofore decided, has not the power to compel that Court to proceed according to those established rules; all that we can do is to prevent proceedings otherwise, by reversing them when brought here on appeal.

All the questions presented by the record are accordingly answered in the affirmative.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the Eastern District of Louisiana, and on the points and questions on which the judges of the said Circuit Court were opposed in opinion, and which were certified to this Court for its opinion, agreeably to the act of Congress in such case made and provided; and was argued by counsel. On consideration whereof, it is the opinion of this Court, 1st. That chancery practice does prevail, and should be extended to litigants in the said Circuit Court, and in this cause. 2d. That the order of the said Court, of the date of 9th March, 1837, should be annulled and vacated. And, lastly, that this cause should be placed upon a rule docket, and the complainants be permitted to proceed according to chancery practice; and the defendants be required to answer without oyer of the documents prayed for, or a service of the bill in French, as prayed for. Whereupon it is now here ordered and decreed by this Court, that it be so certified to the said Circuit Court with directions to proceed accordingly.