THE UNITED STATES, APPELLANTS, *v.* VICENTE P. GOMEZ.

When this court is satisfied, from the evidence before it, that no appeal to it had
been granted by the court below, and that the cause was not before it when
an order was passed, at the instance of the appellee, to docket and dismiss the
case, it will rescind and annul the decree of dismissal, and revoke and cancel
the mandate issued thereupon.

A motion to docket and dismiss a case from the failure of the appellant to file
the record within the time required by the rule of this court, when granted, is
not an affirmance of the judgment of the court below.   It remits the case to the
court, to have proceedings to carry that judgment into effect, if in the condi-
tion of the case there is nothing to prevent it.   That is for the consideration
of the judge in the court below, with which this court has nothing to do, un-
less his denial of such a motion gives to the party concerned a right to the
writ of mandamus.

In the present aspect of this case, such a motion is not to be considered.

Cases cited to sustain the above principles.

THIS was an appeal from the District Court of the United
States for the southern district of California.

It was docketed and dismissed at the preceding term of the court, under the circumstances which will presently be briefly stated. The attention of the court was now called to the case by the following motions, namely :

1. A motion by the Attorney General, to vacate the order dismissing the cause, and to recall the mandate.

2. A motion by Gomez, for a mandamus to the District Court, to compel it to file the mandate, and to permit the execution of the decree of the District Court confirming the land claim.

3. A like motion by Gomez, for a like writ to compel the said District Court to dismiss proceedings before it on the part of the United States, which proceedings were an application to open the decree below and to grant a new trial. These two motions may be considered as one.

4. A motion for a mandamus to compel the surveyor general of California to survey the land confirmed to Gomez by the decree of the District Court.

The history of the case is so fully given in the opinion of the court, that a very brief outline of it will be sufficient.

On the 9th of February, 1853, Gomez, by P. Ord, his attorney, filed his petition before the board of land commissioners, praying the confirmation of his claim to a tract of land called Panoche Grande.

On the 26th of March, 1855, the board decided against the claimant. An appeal was had to the District Court for the northern district of California, but upon representation made that the land claimed lay in the southern district, the transcript was sent to that court.

The occurrences which took place there, and the manner in which an appeal found its way to this court from the decree of that court confirming the claim, are narrated in the opinion of this court.

On the 31st day of January, 1859, a transcript of the record was filed in this court, and a motion made on the part of the claimant to docket and dismiss the cause, which motion was granted, and a mandate sent down to the court below. The mandate was, "that this cause be, and the same is hereby,

remanded to the said District Court. You, therefore, are hereby commanded that such proceedings be had in the said cause, as, according to right and justice, and the laws of the United States, ought to be had, the said appeal notwithstanding."

On the 4th of May, 1859, a motion was made in the District Court, for leave to file the mandate and for leave to proceed under the decree. This motion was resisted by the district attorney, Mr. J. R. Gitchell, on the ground that no appeal had ever been taken by the United States in this case. The records of the court were offered in evidence, and Judge Ogier decided that it was satisfactorily proven to him that no such appeal had ever been taken.

This was the posture of the case when the motions were made which are inserted in the previous part of this report.

The following is the affidavit which is referred to and directed to be published in the opinion of the court.

In the United States District Court for the southern district of California. Vicente P. Gomez *ad.* the United States:

Pacificus Ord, late attorney of the United States for the southern district of California, being duly sworn, says: That at the June term, 1857, of the District Court of the United States for the southern district of California, held at Monterey, Isaac Hartman represented that he was a member of the law firm of Sloan & Hartman, authorized and retained as counsel for Vicente P. Gomez, in the above entitled cause. That he had as counsel for the said claimant obtained an order from the District Court of the northern district, removing the case to the southern district; and that he was ready and willing to present the same to the court, as soon as the same could be heard. Affiant further says, that shortly thereafter, the court being then in session, the said Hartman, acting as counsel for said claimant, presented the said case to the court by reading the petition for review, and the other papers and transcript in the case to the court, for the appellant. That after so doing, this affiant, acting for the United States, admitted, in open court, that in his opinion the claim was a valid one, and that, in accordance with the rulings of the court in previous cases,

*United States* v. *Gomez.*

the case should be confirmed. That thereupon the court ordered that the decision of the land commissioners should be reversed, and a decree of confirmation entered therein for claimant. Affiant further says, that at the next term of the said District Court, held in Los Angeles, in December, the said Hartman, as counsel in said case, presented to affiant a draft of the decree of confirmation of said claim. That upon reading the same, affiant objected to the said draft, on the ground that the same would cover all the land embraced within the limits of the named boundaries, to the extent of eleven leagues. Whereupon the said Hartman made another draft of a decree, restricting the quantity of land to not more than four leagues; which said draft, after being approved by affiant as United States attorney, was signed by the court. That thereafter affiant drafted an order of appeal to the Supreme Court of the United States in said case, on the part of the United States; and on the last day of the term of said court, Col. Kewen, acting for the United States, at the request of affiant, district attorney as aforesaid, asked for and obtained, as affiant was afterwards informed, the said order in said case. Affiant further says, that at or about the time the said Hartman informed him that he had been retained by the said claimant in said case, affiant informed said Hartman that he had been the attorney for said Gomez before the United States land commissioners; and that, for his services therein, the said Gomez had conveyed to him the one undivided half of the tract of land claimed therein. That he had endeavored for a long time to get the Attorney General to appoint some attorney to represent the United States in cases in which he was interested, but without success. That this case had been unacted upon for a long time; and that as the commissioners had, upon the evidence before them, passed favorably upon the validity of the claim, and though they rejected it, it was only on the ground of want of occupation by the grantee; and that as that ground had been overruled by the Supreme Court, there could be no injury to the United States, and no impropriety on his part, as United States attorney, in appearing and consenting to its confirmation; in all of which views of this affiant the said

Hartman then concurred. Affiant further says, that he wrote to the Attorney General of the United States shortly after assuming the duties of the office of district attorney, about December, 1854, stating that he had been employed as counsel, and was interested in several claims then pending on appeal in his district from the land commissioners, and requested that he would cause some attorney to be specially named to represent the United States in such cases. But the Attorney General never made or named any person to act in the matter, as requested. That affiant, being thus left to act in the matter as best he might, did act with the most scrupulous good faith, and to the best of his ability, for the United States, in all such cases. Affiant further says, that he has been informed and believes that the parties who are now and have been endeavoring to impede and defeat this claim, since the confirmation by the United States District Court, are private persons in possession of a valuable quicksilver mine, believed to be within the limits of said grant, lately opened and worked by them, of which one Daniel Gibb, of San Francisco, is believed to be the principal person interested. Affiant further says, that the substantial allegations in certain depositions of said Isaac Hartman and E. W. F. Sloan, dated December, 1859, in said case, are wholly untrue, except as herein admitted.

And further affiant sayeth not. P. ORD.

The case was argued by *Mr. Black* (Attorney General) in support of his motion, and by *Mr. Johnson* and *Mr. Gillet* against it.

The reporter does not consider that the arguments upon these motions would be interesting to the profession generally, and therefore omits them.

Mr. Justice WAYNE delivered the opinion of the court.

This cause was docketed and dismissed in this court upon the motion of the appellee, and a mandate sent to the District Court from which the transcript of its record was obtained, for proceedings to be taken by that court to give to the complainant the benefit of its confirmation to the land in question.

The Attorney General now moves for the recision of the order of dismission, and that the mandate may be recalled.

He does so, alleging that no appeal had been granted to the United States in the court below by which the cause could be brought to this court for its revision ; because there was then pending in the court below, when the claimant obtained the transcript, a motion for the review of the decree which had been given confirming the claimant's title ; secondly, that the court had also under its advisement a motion concerning an appeal.

And the Attorney General further alleges, that the appeal from the decision of the board of land commissioners rejecting the petition, and also that the appeal from the District Court to this court, are fraudulent.

The charges as to the two first rest upon the records which the appellee presented to this court, to have the cause docketed and dismissed.

The Attorney General relies upon depositions and other papers which are on file in the District Court for southern California, and which have been transmitted to this court by Judge Ogier, to establish the charge of a fraudulent combination between the then district attorney of the United States, Pacificus Ord, Esquire, and the claimant of the land in controversy, and his assignees, to allow them to obtain from the District Court a reversal of the land commissioners' decree rejecting the claim.

W. C. Sims, the clerk of the District Court for the southern district of California, deposes that the document on file, giving notice that the claimant intended to prosecute an appeal from the decree of the board of land commissioners, is in the handwriting of Mr. Ord, with the exception of the figures No. 278 and the signature of E. O. Crosby.

The purpose for which this affidavit was made is, to show the interested connection between Mr. Ord and the claimant of the land, from the beginning of the institution of his suit to establish his right, and its influence upon the official conduct of Mr. Ord afterward, in every proceeding in the cause, after it had been removed from the northern district of California to the southern.

Mr. Ord was originally the attorney of Gomez before the board of land commissioners, and filed his petition there as such on the 9th February, 1853. He was not then district attorney, but he became so on the first of July, 1854, before the land commissioners decided the case against his client. After his appointment, and after an order had been obtained, at his instance, to remove the cause from the northern district of California to the southern, of which he was the district attorney, and whilst the cause was pending in the latter, he took from Gomez, for the nominal consideration of one dollar, a transfer to himself for one-half of the land in controversy. This Mr. Ord admits in his affidavit presented to this court by counsel. The conveyance to him bears date on the 24th of November, 1856. It was acknowledged on the same day by Gomez before a notary public of the county of San Francisco, and was, at the request of Mr. Ord, recorded in the county of Merced on the 26th November, 1857; was also filed for record in the county of Fresno on March 26th, 1858, and again recorded by Mr. Ord in Monterey county the 3d May, 1858. A copy of that conveyance is now before us. These dates show that no record of the conveyance to him was made until after the claim had been confirmed by the district judge, upon his representation that, as district attorney, there was no objection to its confirmation; in other words, that he thought the claim a valid claim, and was within the rulings of the court in other claims of the same kind.

We shall cite the notice in its words, for, as it had been in fact the subject of the court's action, and could not have been so without the knowledge of Mr. Ord, and without his agency, it devolves upon him the task to disprove the declarations of Mr. Hartman of the forgery of the name of the law firm of Hartman & Sloan to the paper. We ought to remark, however, that Mr. Sloan, of the firm, is not shown by any paper to have had any personal agency in the matter. The notice is : "Now, on this day, came the parties, the appellant by Hartman & Sloan, and the appellee by P. Ord, United States district attorney : Whereupon, on motion of the attorney of the appellant, it is ordered that the transcript and papers

transmitted from the northern District Court be filed in this court, and that the petition for a review of the same be entered thereon, and that the claimant have leave to proceed in said cause, the same as if it had been originally filed in this court." On the same day, a petition was filed for a confirmation of the claim.

After the confirmation of it in the manner as will hereafter be stated, Mr. Sloan, upon being told of the motion, and that it was signed by the firm of Sloan & Hartman, but, in fact, as if the style of their firm was *Hartman & Sloan*, made his affidavit under a commission instituted by Judge Ogier, that neither as a member of the then firm of 'Sloan & Hartman, nor otherwise, was he ever retained or employed in the case; that he never wrote nor authorized to be written any *petition or other paper* in the case; that he never had seen such a petition; that he had never authorized any one to use his own name, or that of the firm of Sloan & Hartman, in the case; and that, if the paper was signed as it is represented to be, it had been without any consultation with him, or his consent or approbation.

The notice for a review of the decision of the board of land commissioners by the District Court, signed, as has been said, by E. O. Crosby, and wholly in the handwriting of Mr. Ord, was given after his connection as attorney for Gomez had ceased, and after he had become the half owner of the land. Mr. Crosby does not appear afterwards in the suit as the retained attorney of Gomez, nor does it appear in any other proceeding in the record of the case that he ever was so. It does not appear that Mr. Crosby was ever recognised by the land commissioners or by the District Court as the attorney of Gomez, from which we infer, as the notice was in the handwriting of Mr. Ord, that Mr. Crosby was his agent for the purpose of obtaining a review of the case in the District Court. Afterward, upon its being found out that the land in controversy was in the southern district of California, and not in the northern, a petition was filed for its removal to the southern district, which was granted.

At this point began those irregularities which, until ex-

plained, must leave an unfavorable impression in respect to Mr. Ord's discharge of his official obligations to the United States.

The motion made for the removal of the cause to the southern district is said to have been signed by E. W. F. Sloan, Esquire, and presented by him in open court; and the order said to have been passed recognises that as a fact. On the same day, the firm of Hartman & Sloan is reported in the transcript to have filed a notice of appeal with the clerk of the District Court for the southern district. The paper has all of the formality and substance which such a paper should have, but Hartman & Sloan deny the fact of having had any agency in making such a motion; and these separate affidavits would be sufficient to sustain their disclaimer, were it not, so far as Hartman is concerned, that his subsequent conduct in the case shows a connection between himself and Mr. Ord, which throws suspicion upon both; and that is aggravated by Hartman's deposition, by that of other persons, *and by the narrative given by Mr. Ord of his conduct in the suit.*

Hartman then makes his affidavit, that he had no knowledge who made and caused the petition to be filed, nor by whose authority and direction the same was done. But he states that, whilst attending the June term of the southern District Court in 1857, Mr. Ord, then United States district attorney, asked him if he would do him the favor to present a claim to the court for confirmation, stating it was a case in which there would be no opposition on the part of the Government. That, not suspecting there would be anything wrong about a claim to which the Government had no objection, he consented to do so; that, on the same day, the court being in session, and he being seated at the bar table, Mr. Ord passed to him the transcript in the case of Gomez and the United States, which he read to the court without any remarks, supposing it to be the case of which Mr. Ord had spoken to him; that after he had finished reading it, Mr. Ord remarked to the court that there was no opposition upon the part of the Government to a confirmation; whereupon the court replied, that there being no objection, the claim would

be confirmed, as a matter of course.   Mr. Hartman continues his narrative of his further connection with the case and with Mr. Ord, six months after, at the December term of the court, when it was held at Los Angeles.   He says that then Mr. Ord remarked to him that it had been omitted, at the time of the confirmation of the claim, to have a decree signed by the judge ; that Mr. Ord requested him to draw a decree, and to present it to the judge, to be signed *nunc pro tunc.*   He says that he did so without knowing or suspecting that Mr. Ord had an interest in the land claimed by Gomez.   This statement by Hartman of his agency in the confirmation of the claim, and in getting a decree upon it six months afterward at the instance of Mr. Ord, is denied by the latter in his affidavit, *excepting as to his declaration to the court that the Government had no objection to the confirmation of the decree.*   The latter he admits in stronger terms than have been given.   We shall use the affidavit for other purposes, and will have it printed in connection with this opinion, in justice to Mr. Ord, that the relations between himself and Mr. Hartman may be properly estimated from their respective declarations concerning it, only remarking now that there is proof that Mr. Hartman had subsequently declared himself to have been the attorney of Gomez in the case ; that he had been so in all that he had done in the case ; and that he had charged and demanded a fee for his services. It is not necessary for us to attempt to reconcile these differences, but it has certainly turned out unfortunately for Mr. Ord, in raising a violent presumption, from the manner in which they acted in the cause, that there was a concert between them to reverse the decision of the commissioners, and to obtain a decree in the District Court for the claimant.

Besides the motion of the Attorney General to vacate the order dismissing the cause, and to recall the mandate, a motion has been filed by the claimant for a mandamus to compel the judge of the District Court to file the mandate, and to permit the execution of the decree confirming the claim.   Another motion has also been made by the claimant for a mandamus to compel the judge to dismiss the proceedings before it upon the part of the United States, to open the decree, and to ob-

tain a new trial. And there is also a third motion for a man-damus to compel the surveyor general to survey the land confirmed to Gomez.

. We shall not go into the consideration of these motions, but will confine ourselves to that of the Attorney General, using, however, such depositions as have been made under each of them, which correspond with and confirm the record presented to the court by the appellee, when he moved to have the cause docketed and dismissed.

Judge Ogier, in a return made to the first motion for a man-damus, certifies that the cause was tried by him upon the appeal from the land commissioners, and that he gave a judgment confirming the claim under the following circumstances:

Mr. Hartman presented the cause to the court, stating only its title and its number upon the docket, and Mr. Ord appeared for the Government, and stated that there was no objection by the United States to its confirmation. As a matter of course, without inquiry or examination, that he directed a judgment of confirmation to be entered, but that no decree was given at that term of the court, nor was a motion made for one, or any motion for an appeal by the United States to the Supreme Court. At a subsequent term of the court, E. J. McKewen, representing Mr. Ord, made a motion for an appeal in this cause and in several others; that, being then in doubt if an appeal could be given after the expiration of the term of the court at which judgment was rendered, he took the subject under an advisement, and that then Mr. McKewen suggested that the same point was under consideration in another case before the Supreme Court, which determined him to reserve his decision until that point was ruled here; then that Mr. Hartman offered a judgment of confirmation, Mr. Ord assenting thereto, on behalf of the United States, and it was ordered. .

The case remained in this condition, the right of the United States to an appeal being reserved until the 7th day of December, 1858, when Mr. Gitchell, having succeeded Mr. Ord as district attorney, filed a motion for leave to withdraw Mr. Mc-Kewen's motion for leave to appeal, and also filed another motion for a rehearing of the cause, substituting the last for a

motion which had been made by Mr. Stanton, then in San Francisco, and also representing the United States as its specially retained attorney. A day was then fixed, with the consent of all the parties, for hearing the pending motion. When the day arrived, Mr. Gitchell made a motion for a continuance, with an affidavit setting forth that the decree which had been given for the confirmation of the claim had been fraudulently obtained from the court, Mr. Ord having become the owner of half the land in controversy by a conveyance from the claimant, and that he had conspired with Gomez, or his assignees, to permit the judgment to be given for Gomez without a contest on the part of the United States. A copy of the conveyance from Gomez was filed with the consent of the claimant.

Mr. Gitchell's motion for a continuance was refused, on the ground that the proper motion under his charges was to ask for leave to file a bill of review. But Judge Ogier, feeling and thinking that he had improvidently given a judgment of confirmation, did continue the hearing of the motions to obtain proofs, if any could be had, concerning the contrivance by which he had been imposed upon. A commission was issued by him for that purpose, and under it Mr. Sloan made the affidavit denying all connection and attorneyship for Gomez, as has already been recited in this opinion. The case then remained in the District Court as it was when the motions which were made, without any further action upon that for an appeal.

This narrative has been given from documents, depositions, and declarations of the parties concerned in the case, and also by other persons, apparently disinterested, in respect to the land. They will be found either on the record upon which the cause was docketed and dismissed in this court, or in the book of exhibits sent to this court by Judge Ogier, which were obtained to enable him to act understandingly upon the merits of the case. The case *being still before the court*, we do not perceive any irregularity in the proceedings. Besides the motion for granting the appeal, the court had jurisdiction of the cause to determine what proceedings the claimant was entitled to

under the circumstances of the case, to get the benefit of the decree, by survey or otherwise.

We will now proceed to show, from the record of the case filed in this court by the claimant, and from the official declarations of the clerk of the District Court from whom the record was obtained, that this court had no jurisdiction in the case when it was docketed and dismissed.

Mr. Sims, the clerk of the court, deposes, that in this case a transcript was called for by letter, signed W. W. McGarrahan; that, when that letter was received, no appeal had been allowed to carry the case to the Supreme Court, and that a motion for that purpose was still under the advisement of the court. The deputy clerk, Mr. Coleman, however, sent to McGarrahan a transcript, which was received by McGarrahan; and, that not being satisfactory, it was returned to the clerk, with a letter from McGarrahan, stating in what particulars it was deficient; and among them, that it was deficient in *not having a copy of the order for an appeal to the* Supreme Court, which McGarrahan suggested would be found on the minutes of the court. To this letter a reply was given by Mr. Stetson, who had succeeded Mr. Coleman as deputy, containing an order for an appeal, as it appears on the transcript before us. It is difficult to determine how such an order found its way into the second transcript of the record, when it was not in the first, and when the clerk deposes that no such order had ever been given. The order for an appeal may have been drawn in anticipation of the action of the court upon the pending motions, and left in the clerk's office unintentionally, and supposed by the deputy clerk to have been passed by the court, or it may have been drawn by Mr. Ord and left in the office, to keep up the semblance of his having faithfully represented the United States in the case, or it may be that some one of the parties interested in the land had surreptitiously placed it in the transcript to accomplish the purpose of having the case docketed and dismissed in this court. Dates will, in some measure, throw light upon the matter. It was written and dated on the same day that the court took under its advisement the motion relating to the appeal. Such antagonism in

the action of the court upon the same subject matter of such importance as this was, would, indeed, be extraordinary; and the record shows that it does not exist.

It is a delicate and most unwelcome task which we are performing; but it must be done, in order that violated justice may be vindicated, and that official purity of conduct in our courts may be preserved and be unsuspected.

The record upon which this case was docketed and dismissed, in connection with the book of exhibits sent to this court by Judge Ogier, establish, in our view, the following facts:

That Mr. Ord became the purchaser of half the land in controversy from Gomez, the claimant, when he was the district attorney of the United States; that whilst he was district attorney, he prepared in his own hand the paper, signed by S. O. Crosby, for the removal of the cause from the board of land commissioners to the District Court; that Mr. Ord did not officially, as district attorney, represent the United States in the case in the District Court, in any one particular, but allowed it to be done by others, who were interested in establishing the claim of Gomez, to whom he gave his official confidence, and who are shown by the record not to have been the retained attorney of Gomez; that he permitted a judgment to be taken against the United States without argument, or the production of proof to establish the validity of the claimant's right to the land, by saying to the court, in his official character, that the United States had no objection to the confirmation of the claim. And it is established by the record itself that no appeal has been given to the United States by the court below. Mr. Ord admits that he relies upon the declaration only of the person to whom he confided the order which he drew for an appeal, that it had been granted by the court.

Under such circumstances, we conclude that no appeal had been granted; that the cause was not before us when the appellee made his motion to docket and dismiss it.

A motion to docket and dismiss a cause from the failure of the appellant to file the record within the time required by the

rule of this court, when granted, is not an affirmance of the judgment of the court below. It remits the case to the court to have proceedings to carry that judgment into effect, if in the condition of the case there is nothing to prevent it. That is for the consideration of the judge in the court below, with which this court has nothing to do, unless his denial of such a motion gives to the party concerned a right to the writ of mandamus. The case is before us also upon such a motion, but we do not consider it upon the ground that this court had no jurisdiction of the case when it was docketed and dismissed, and that the appellee had no right to make that motion, under the rule of this court. All that we shall now do will be to correct an irregularity in the order given by this court in a case in which we believe it had no jurisdiction, and because the circumstances of it disclose that the judgment in the court below had been obtained by contrivance, and with the consent of the district attorney, in violation of his obligations to the United States, from which he necessarily anticipated a benefit, being then owner of half the land in controversy.

In vacating the order for the dismission of the case, and for recalling the mandate, we do no more than to correct a proceeding improvidently allowed by the court, under a misrepresentation to it of the actual condition of the cause in the court below. Orders of the same kind for misrepresentation have often been made and allowed. We cite two cases from the English reports. In Stewart and E. Drew, petitioners, and P. J. Agnew, in Shaw's Reports, it was held to be incompetent to repeal a case on the merits formerly argued, and on which judgment had been pronounced by the House of Lords, but that the judgment might be amended on a point in which no decision had been given by the court of session, and on which no argument had been had, through misrepresentation stated in the House of Lords by the party against whom the judgment was pronounced. 1 Shaw, 413.

In ex parte James White, Courtenay et al., 4 House of Lords Cases, 313, it was ruled upon petition that a judgment of the house given on appeal cannot be reversed; but when such appeal and judgment have been obtained by suppression

and misrepresentation, the house will afterwards discharge the order granting leave to appeal, and the order constituting the judgment thereon.

Much was said in the argument of this motion concerning declarations, and a correspondence of the Attorney General in relation to an appeal having been taken in the court below for the United States. It matters not what they were, or how the attorney treated the matter, if he was deceived as to the actual fact of an appeal having been allowed. If it turns out to be that it had not been, any admission to the contrary cannot affect the United States.

Since the case was argued, the counsel for the claimant, with the consent of the Attorney General, has placed before us an affidavit made by Mr. Ord, in explanation of his conduct in the trial of the cause in the District Court, embracing his connection with Gomez, and his purchase from him of half of the land in controversy. We believe it to be proper to give him the benefit of his own narrative, and therefore shall direct his affidavit to be printed in the forthcoming volume of the Reports of this term of the court, with this opinion.

We direct that the order for docketing and dismissing this cause shall be vacated, and that the mandate which followed it shall be recalled.

The motion of the Attorney General for such purpose is granted.