UNITED STATES v. BARBER LUMBER CO. et al.

(Circuit Court, D. Idaho, C. D. October 3, 1908.)

1. COURTS (§ 85*)—RULES—EFFECT.

The rules promulgated by the Supreme Court of the United States for the guidance of federal courts have the force and effect of law.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 294; Dec. Dig. § 85.*]

2. EQUITY (§ 321*)—PLEADING—TIME—EQUITY RULES—COMPLIANCE BY UNITED STATES.

Where the United States voluntarily comes into a federal court, seeking relief against an individual, her rights are those of an ordinary suitor, and not those of a sovereign, and hence she is equally bound to comply with general equity rule 66, regulating the time for the filing of pleadings.

[Ed. Note.—For other cases, see Equity, Cent. Dig. § 629; Dec. Dig. § 321.*]

3. EQUITY (§ 210*)—PLEADING—FILING AFTER TIME.

Where, in a suit by the United States to set aside certain patents to timber land, no replication was filed within the time required, owing to the mistake or inadvertence of a former district attorney, his successor would be permitted to file a replication nunc pro tunc, subject, however, to an order requiring him to speed the cause.

[Ed. Note.—For other cases, see Equity, Cent. Dig. § 483; Dec. Dig. § 210.*]

In Equity. On motion to dismiss.

C. H. Lingenfelter, U. S. Dist. Atty.

C. T. Bundy, J. H. Hawley, and Alfred A. Fraser, for defendants.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

DIETRICH, District Judge. By its bill complainant seeks to have vacated and set aside a large number of patents to timber lands, which it is averred were procured through the operation of a fraudulent conspiracy entered into by the defendants and others; the title to all the lands having, subsequent to patent, been conveyed to the defendant Barber Lumber Company. The bill was filed April 17, 1907. Subpœna issued December 4, 1907, and upon the same day service was made upon the Barber Lumber Company, and upon two of the other defendants. Apparently no effort has been made to procure further service, and, indeed, it seems to be conceded that the Barber Lumber Company is the only necessary party defendant. In due time the Barber Lumber Company appeared, and upon February 1, 1908, it filed and served its answer, denying the equities of the bill. No replication having been filed, the defendant, on September 16, 1908, filed a motion to dismiss the suit on account of complainant's default in that respect. Upon the presentation of the motion in open court on the following day, counsel for the government tendered for filing its replication, with the request that it be filed nunc pro tunc; that is, as of the next succeeding rule day after the filing of the bill, as provided in general equity rule No. 66. Thereupon it was stated upon behalf of the defendant that it desired only that the suit be finally submitted upon its merits as early as practicable, and that it would not press its motion for dismissal, provided complainant would file its replication and agree to speed the cause; no other terms being demanded. To this condition counsel for the government was unwilling to assent, and was unable to advise the court of any date when the taking of testimony could be commenced or concluded. The court having intimated that it was disposed to direct the filing of the replication, but that the government, as a litigant, is, in matters of procedure, required substantially to conform to the rules which have been promulgated for the guidance of the courts and litigants, the district attorney, explaining that the default had occurred prior to his appointment, and being surprised by the defendant's motion, asked leave to make a showing and furnish a brief, which was granted. In addition to filing an affidavit, in which certain conditions are set forth which it is thought appeal to the discretion of the court, and which will later be noticed, there is presented an elaborate brief, in which it is contended:

"That in the matter of practice and the rules of court * * * the government [using the precise language of counsel] not only does not stand before the court in the same light as an individual suitor, but that it has privileges and immunities which, of necessity, are prerogatives of government; that it is not bound by the acts of its agents' negligence, even if such acts are willful; that time does not run against it; and that laches cannot be imputed to it. This doctrine is derived from a principle of public policy, and comes down even in republican forms of government from a basic principle of monarchy that 'the king can do no wrong.'"

It must be noted that this is not a plea to the court to relieve complainant from a default into which it has fallen through the inadvertence or neglect of its former district attorney. Such relief is not resisted by defendant, and the court has already intimated that it would be granted. It is not an appeal to the court to exercise its discretion in granting to complainant such time, in excess of the 90

days prescribed by the rules for the taking of evidence, as may, under all the circumstances of the case, be reasonably necessary. Upon the other hand, it is a negation of the necessity for such application. The premise is that complainant is above and exempt from the rules of court; and it logically and necessarily follows that, not being subject to a rule, it cannot be held to be in default for any failure to conform thereto, and, not being amenable to the rule limiting the time for taking evidence, there is no necessity for its seeking an enlargement of the prescribed time. Nor is it suggested that, while generally bound to comply with the rules of the court, the government, for some specific reason, is relieved from the operation of the particular rule under consideration. The proposition is a declaration of the independence of the government from all rules.

To such a view I am unable to give my assent. It is utterly at variance with fundamental principles, and is impossible in practice. If the litigant is sovereign, the court is subject. It is the sworn duty of the judge "to administer justice without respect to persons." Rank cannot be recognized. How can rights be correctly weighed if one party is permitted to lay his hand upon the balance? It will not do to say that the government will act justly. If so, it should be left to adjudge its own controversies without the intervention of the courts. Nor is it material that the prerogatives of sovereignty are claimed only as to the rules of practice and procedure. Time and mode of the trial of a right are, not infrequently, of the substance of the right itself. Delay may mean disaster, especially to the weaker party. "To none will we sell, to none will we deny, or delay, right or justice." So reads the Great Charter. It is a mistake to assume that rules of procedure are mere formalities, adopted with the view only to the convenience and dignity of the courts. They are intended to promote the more perfect administration of justice, and experience demonstrates that the courts can best fulfill their functions by exacting substantial compliance therewith. An individual cannot maintain an action against the government; but this exemption may be waived. So the government may voluntarily come into court, seeking relief against an individual. It comes, however, not as a sovereign, but as a suitor. Within its own domain the court is supreme. The government, having a controversy, may invoke the assistance of the courts; but in entering their portals it voluntarily divests itself of sovereignty, submits itself to their jurisdiction, and consents to conform to their rules and abide by their decrees.

Looking at the question in another aspect, it is not doubted that Congress, by direct enactment, may subject the government to the process of the courts and prescribe the procedure to which it must conform as a party litigant. But by section 917 of the Revised Statutes (U. S. Comp. St. 1901, p. 684) Congress, doubtless appreciating the difficulty of devising direct legislation of sufficient elasticity and adaptability, conferred upon the Supreme Court of the United States the power "generally to regulate the whole practice to be used in suits in equity or admiralty by the Circuit and District Courts"; and by section 918 (page 685) a like power was conferred upon the Circuit and

District Courts "to regulate their own practice as may be necessary or convenient for the advancement of justice and the prevention of delays in the proceedings," not inconsistent with any law of the United States, or any rule prescribed by the Supreme Court. From time to time the Supreme Court of the United States has, pursuant to the authority thus conferred upon it, promulgated rules for the guidance of the courts, one of which is equity rule No. 66. These rules have the force and effect of law. American Graphophone Company v. National Phonograph Company (C. C.) 127 Fed. 349.

"No District or Circuit Court of the United States has the power to adopt a practice inconsistent with those rules or to disregard their provisions." Northwestern Insurance Company v. Keith, 77 Fed. 374, 23 C. C. A. 196.

"Parties to suits in Louisiana (as in all other jurisdictions) have a right to the benefit of these rules; nor can they be denied by any rule or order, without causing delays, producing unnecessary and oppressive expenses, and, in the greater number of cases, an entire denial of equitable rights." Gaines v. Relf, 15 Pet. 9, 10 L. Ed. 642.

Counsel remark the absence from the Reports of any case directly in point, and cite only decisions affirming the proposition that generally, in the matter of substantive rights, statutes of limitation and the doctrine of laches cannot be invoked against the sovereign. These are familiar exceptions to general rules, and are based upon considerations wholly inapplicable to court procedure. In none of the numerous decisions cited is there any intimation that the exceptions are to be extended to embrace violations of the rules of practice and procedure in the courts. Indeed, the books do not seem to contain any case where a proposition like that here asserted has been put forward; and it is incredible that, if the government has such extraordinary prerogatives, it has heretofore apparently neglected to assert them. In no case which has come under my observation, where the government is a party, has any distinction been made in exacting compliance with the rules because of its sovereignty. Doubtless, where discretion is left to the court, it may properly take into consideration the conditions under which the government must act, the fact that it must employ agents in various degrees of subordination, and that in some matters it cannot proceed as expeditiously as may private individuals. Such considerations do not look to the suspension of the rules, but only to their reasonable enforcement. Distinctions of the same or similar character, and for like reasons, might properly be made, where all parties are either natural persons or private corporations.

In United States v. Fremont, 59 U. S. 30, 15 L. Ed. 302, the appeal of the government was dismissed by the Supreme Court because it had failed to file the record within the first six days of the term, as required by the rules of the court.

In United States v. Pacheco, 63 U. S. 225, 16 L. Ed. 336, the appeal of the United States was dismissed for failure to comply with the rules of the court. A like penalty for a similar default was imposed upon the government in United States v. Gomez, 64 U. S. 326, 16 L. Ed. 552.

In United States v. Atherton, 102 U. S. 372, 26 L. Ed. 213, impliedly it is held that the government is bound by the same rules of pleading as apply to private litigants. The court refused to interfere with the action of the trial court in denying the application of the government to be permitted to amend its bill. There is no suggestion that as a party in court the government occupies a favored position. See, also, United States v. Ames, 99 U. S. 35, 25 L. Ed. 295.

In United States v. Lee Yen Tai, 113 Fed. 465, 51 C. C. A. 299, the Circuit Court of Appeals declined to consider the errors assigned by the government, because the assignments did not comply with the rules of the court.

In United States v. Rossi, 133 Fed. 380, 66 C. C. A. 442, the Circuit Court of Appeals of this circuit enforced its rule No. 10 (150 Fed. xxvii, 79 C. C. A. xxvii) against the government, by refusing to consider its exceptions to the charge of the trial court, because they did not comply with the requirements of the rule.

In Mitchel v. United States, 9 Pet. 743, 9 L. Ed. 283, the Supreme Court refused the application of the government for further time in which to produce proofs.

In Mountain Copper Company v. United States (C. C. A., Ninth Circuit) 142 Fed. 625, 73 C. C. A. 621, it is said:

"It is the well-established law that, when the government comes into a court asserting a property right, it occupies the position of any and every other suitor. Its rights are precisely the same; no greater, no less."

It is true that this language was not used with specific reference to matters of practice or procedure; but it is thought to be a statement of the general rule, subject, only, to certain recognized exceptions.

In The Siren, 74 U. S. 152, 19 L. Ed. 129, it is said:

"But, although direct suits cannot be maintained against the United States, or against their property, yet when the United States institute a suit they waive their exemption, so far as to allow the presentation by the defendant of set-offs, legal and equitable, to the extent of the demand made or property claimed, and when they proceed in rem they open to consideration all claims and equities in regard to the property libeled. They then stand in such proceedings, with reference to the rights of defendants or claimants, precisely as private suitors, except that they are exempt from costs and from affirmative relief against them, beyond the demand or property in controversy."

In United States v. Stinson, 197 U. S. 200, 25 Sup. Ct. 429, 49 L. Ed. 724, the Supreme Court, in speaking of the only matters of practice under consideration, said:

"The government is subjected to the same rules respecting 'the burden of proof, the quantity and character of evidence, the presumptions of law and fact, that attend the prosecution of a like action by an individual."

See, also, Carr v. United States, 98 U. S. 433, 25 L. Ed. 209; United States v. Smith, 94 U. S. 214, 24 L. Ed. 115; United States v. Stinson, 125 Fed. 907, 60 C. C. A. 615; United States v. Beebee (C. C.) 17 Fed. 36; United States v. Ingate (C. C.) 48 Fed. 251.

Turning, now, to those features of the case which appeal to the court's discretion, what order should be entered? Upon behalf of complainant it is urged that the default occurred prior to the appointment

of the present district attorney; that he has not yet had time to familiarize himself with all the business pending in his district; that the issues involve numerous transactions, and the trial will necessitate the taking of much testimony from many witnesses; and that for a portion of the time prior to December 1st the district attorney must give his attention to the trial of criminal cases.

It is also suggested that, at the time the motion was made, some of the record evidence was not in the custody of the district attorney, but was being used by the government in proceedings pending in Wisconsin, looking to the removal of some of the officers of the defendant company to this jurisdiction for trial on criminal charges growing out of the transactions referred to in the bill; but manifestly this is but a temporary condition, and no difficulty should be experienced in procuring a return of the originals, or, if they are still unavailable, of securing certified copies thereof.

It is further suggested that the taking of testimony should await the final determination of the pending criminal proceedings; but whatever, if any, valid reasons there may, at one time, have been for taking such a course, they are no longer persuasive. Upon the trial of one of the criminal cases growing out of these transactions more than a year ago, the government, of necessity, in a large measure, disclosed its case against the other defendants, who have not yet been tried. Furthermore, the trial of still another defendant has been set for an early date, at which time it will doubtless be necessary for the government again to traverse the ground and make public the facts in its possession.

Upon the other hand, it is represented that the government has not used, and is not using, diligence in the prosecution of the suit; that nearly 18 months have elapsed since the suit was commenced, and nearly 8 months since answer was filed; that the pendency of the suit casts a cloud upon the defendant's title; that it has erected a lumber manufacturing plant, at an expense of several hundred thousand dollars, and that, for its successful operation, it is necessary to build a railroad into the timber lands; that the attack upon its title hopelessly impairs its credit and renders it impossible to procure funds for the construction of such a road; that it is paying taxes upon the lands; and that the standing timber is subject to, and must be protected against, the ravages of forest fires.

I have considered both the conveniences and the necessities of the parties, and it is my conclusion that the replication be filed nunc pro tunc; that the complainant be given until and including January 15, 1909, in which to take its evidence; that the defendant Barber Lumber Company be given 30 days thereafter in which to take its evidence; and that the complainant have 15 days thereafter in which to take evidence in rebuttal.

An order will be entered accordingly.