UNITED STATES v. BASIC CO.

(Circuit Court of Appeals, Ninth Circuit. February 2, 1903.)

No. 871.

Public Mineral Lands—Cutting Timber—Statutes—Construction.
    Act June 3, 1878, 20 Stat. 88 [U. S. Comp. St. 1901, p. 1528] section 1, provides that all citizens of the United States, bona fide residents of specified states and all other mineral districts of the United States, are authorized to remove timber on public mineral lands not subject to entry except for mineral entry, for building, agricultural, mining, and other domestic purposes. *Held*, that such act authorized the removal of timber not only from land on which mining claims had been located, or in which mineral has actually been discovered, but also on other lands lying in close proximity, or in the neighborhood of such mining claims, having the general character of mineral lands.

2. Same—Rules of Interior Department—Compliance—Burden of Proof.
    Act June 3, 1878, 20 Stat. 88 [U. S. Comp. St. 1901, p. 1528] section 1, authorizes the cutting of timber from public mineral lands, subject to such rules and regulations as the Secretary of the Interior may prescribe; and section 3 [U. S. Comp. St. 1901, p. 1529] provides that any person violating the act or any rules or regulations of the Interior Department shall be punished, etc. *Held*, that the burden was on the defendant in an action by the United States to recover for the value of timber cut from the public domain, in which it claimed that the cutting was justified by such statute, to show that it had complied with the rules and regulations established by the Interior Department in that behalf, and, where there was no evidence of a compliance with such rules and regulations, a verdict in favor of defendant could not be sustained.

In Error to the Circuit Court of the United States for the District of Idaho.

R. V. Cozier, U. S. Atty.
W. B. Heyburn, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge. This was an action brought by the United States in the United States Circuit Court for the District of Idaho to recover the sum of $10,745.67 from the defendant in error, a New Jersey corporation doing business in Idaho, the alleged value of certain logs and lumber which the United States claimed were unlawfully cut from the public domain during the year 1898, and con-

verted by the defendant in error to its own use. The jury returned a verdict in favor of the defendant in error, and judgment was entered accordingly. The United States brings the case to this court upon writ of error.

It appears from the evidence that the defendant in error bought the logs and lumber in question from certain contractors, who cut the timber mainly from unappropriated public lands, and that the timber so cut was used by the defendant in error for mining purposes. The defendant in error justifies the cutting and use of the timber under the act of June 3, 1878, entitled "An act authorizing the citizens of Colorado, Nevada, and the territories to fell and remove timber on the public domain for mining and domestic purposes." 20 Stat. 88 [U. S. Comp. St. 1901, p. 1528]. Section 1 of this act provides that:

"All citizens of the United States and other persons, bona fide residents of the state of Colorado, or Nevada, or either of the territories of New Mexico, Arizona, Utah, Wyoming, Dakota, Idaho or Montana, and all other mineral districts of the United States, shall be, and are hereby, authorized and permitted to fell and remove, for building, agricultural, mining, or other domestic purposes, any timber or other trees growing or being on the public lands, said lands being mineral, and not subject to entry under existing laws of the United States, except for mineral entry, in either of said states, territories, or districts of which such citizens or persons may be at the time bona fide residents, subject to such rules and regulations as the Secretary of the Interior may prescribe for the protection of the timber and of the undergrowth growing upon such land, and for other purposes: provided, the provisions of this act shall not extend to railroad corporations."

Section 3 [U. S. Comp. St. 1901, p. 1529], provides:

"Any person or persons who shall violate the provisions of this act, or any rules or regulations in pursuance thereof made by the Secretary of the Interior, shall be deemed guilty of a misdemeanor, and, upon conviction, shall be fined in any sum not exceeding five hundred dollars, and to which may be added imprisonment for any term not exceeding six months."

Under the authority of this statute, the Secretary of the Interior prescribed rules and regulations requiring, among other things, that every owner or manager of a sawmill, or other person felling or removing timber under the provisions of the act, should keep a record of all timber so cut or removed, stating time when cut, names of parties cutting the same or in charge of the work, and describing the land whence cut by legal subdivisions, if surveyed, and as near as practicable when not surveyed, with a statement of the evidence upon which it is claimed that the land was mineral in character, and stating also the kind and quality of lumber manufactured therefrom, together with the names of the parties to whom such timber or lumber was sold, dates of sale, and the purpose for which sold. It was further provided that every such owner or manager of a sawmill, or other person felling or removing timber under the act, should not sell or dispose of such timber, or lumber made from such timber, without taking from the purchaser a written agreement that the same should not be used except for building, agriculture, mining, or other domestic purposes within the state or territory. It was also provided that every such purchaser should further be required to file with said owner or manager a certificate under oath that he purchased such

timber or lumber exclusively for his own use, and for the purpose aforesaid. It was required that the books, files, and records of all millmen or other persons so cutting, removing, and selling such timber or lumber, required to be kept as above mentioned, should at all times be subject to the inspection of the officers and agents of the Land Department. It was further provided that timber felled or removed should be strictly limited to building, agriculture, mining, and other domestic purposes within the state or territory where it grew, and that all cutting of such timber for use outside of the state or territory where the same was cut, and all removals thereof outside of the state or territory where it was cut, were forbidden. It was also provided that no person be permitted to fell or remove any growing trees of any kind whatsoever less than eight inches in diameter. This last prohibition was not made applicable to black or "lodge pole" pine growing in separate bodies upon mineral lands. Persons felling or removing timber from public mineral lands of the United States were required to utilize all of each tree cut that could profitably be used, and were required to cut and remove the top and brush, and dispose of the same in such manner as to prevent the spread of forest fires.

The United States assigns as error the construction given by the court to this act in its charge to the jury. The instruction excepted to was as follows:

"The contention of the government, through the Department of the Interior, by its agents, is that the cutting of timber under this act must be limited to such portions of the land in a mineral district as is shown to actually contain mineral; that is, the mineral must be actually discovered in the ground. This, in fact, would be to limit it to that ground located as mining ground or mining claims, for it is a well-known fact that as fast as mineral is discovered the ground in which it is found is so located as a mining claim. Such a construction is, in my opinion, open to two serious objections: First. It would leave such an insignificant amount of land available to timber— for only a comparatively small portion of the land is covered by mining claims—that the supply would be totally inadequate to the necessities of the communities. There would not be sufficient timber on any one mining claim to supply even the wants of that claim in its development and operations. But the act provides not only for the use of the timber for the miner, but also every other citizen, and for every domestic purpose. Keep that in view —for all citizens and bona fide residents of the mining district, and for all domestic purposes. It was contemplated that by the discovery and development of a mining camp all other industries, including the building of mills, towns, etc., would follow. The act expressly provides that for all such wants the citizens could be supplied with the timber on mining lands. Even a slight knowledge of the operations and the necessities of a mining camp, with all its varied interests, will convince any one that these necessities cannot be supplied from the timber growing on the located mining claims or the equivalent—that ground actually shown to contain mineral. The second objection to this construction is this: That all the timber in the mining claims belongs not to the citizens generally, but to the owners of those claims, and other citizens cannot take or use it. So you will see that, if the cutting of timber is limited simply to that which grows on mining claims, nobody but the owners of the mining claims can use timber, although the law provides for its use by other citizens. These two conditions make the construction asked absolutely untenable. It would make the law a futile one. It would be almost worthless, and we cannot for a moment imagine that Congress contemplated it should be limited to the narrow lines now asked. I say distinctly, in my own opinion, that the law didn't intend the cutting of timber

to be confined to those grounds located as mining claims, or in which mineral had actually been discovered. If that is not the law, the question then is, what is the law? To what lands does this act of Congress refer? My answer to that is this: That the only reasonable construction to be given to it is that it includes as mineral lands not only those which have been located as mining claims, or in which mineral has actually been discovered, but also the other lands lying in close proximity to, or in the neighborhood of, such mining claims, or those having the general character of mineral lands.

"In this connection you must bear in mind that, as a rule, the land in a mineral district and in the neighborhood of mines is of such a hilly, broken character that it is utterly useless for agricultural or other purposes than mining, and for the timber growing upon it, and, as Congress is presumed to have known this fact, it is presumable that it intended to include all such lands under the designation of mineral lands, and with the view of granting the use of the timber thereon, as stated.

"As a further aid in reaching your conclusion upon this question, I instruct you that lands of this broken character lying reasonably near lands in which mineral has actually been discovered, and which is so like' it in general appearance that miners would be justified in prospecting it in the expectation of discovering mineral, should be classed as part of the mineral lands of the mining district, and come within the purview of this law. * * * It is for you to determine, first, from the evidence in this case, whether these lands on which this timber was cut are of the character which I have described, and which I have instructed you should come under the head of mineral lands. If you find they are of that character, then the defendant was justified in cutting the timber from the land, and your judgment would have to be for the defendant. If, on the contrary, you find they are not of that character, do not come under the head of mineral lands, within the definition I have given you, then your judgment must be for the government for such damages as you may find, depending on the two rules I gave you in the beginning as to whether it was a willful or unintentional trespass."

In the case of Frank P. Hardin et al., 1 Land Dec. Dept. Int. 607, the Secretary of the Interior discussed the scope and purpose of the act of June 3, 1878, and referred to the fact that prior to 1878 it was the custom in all the mining regions of the United States for the inhabitants to appropriate the timber on government lands for domestic purposes; that cities and towns, with churches and schoolhouses, had been built with the timber so taken from the public lands; and that the act of June 3, 1878, was passed to establish by positive enactment a right claimed and exercised without interference on the part of the government for a period of about 30 years. This broad construction of the act was given as instruction for the guidance of the officers of the Land Department in the enforcement of the provisions of the act, and in justification of this broad construction the Secretary said, "If the timber is cut having reference to the rules established by the department as to size, etc., no complaint ought to be made." We agree with the Secretary that this construction of the act is in harmony with its evident purpose, and is not open to serious objection, if the rules and regulations of the Land Department are observed and enforced. It has been the policy of Congress to develop the mineral resources of the country, and provide practical legislation to that end, placing only such restraint upon the settler and mineral explorer as would provide against waste and destruction. The act under consideration is part of this legislation, and, in our opinion, should be construed with reference to the conditions prevailing in the mining regions requiring that the taking of

timber for mining and domestic purposes should not be restricted to lands known to contain minerals in paying quantities, but should include such adjacent lands as, under all the conditions, would not be deemed to be subject to entry under any of the laws of the United States except as mineral lands; this right or privilege being exercised under such regulations as will preserve the timber for the benefit of the inhabitants engaged in or connected with the mining industry. The District Court for the District of Colorado in United States v. Edwards, 38 Fed. 812, and the Circuit Court for the District of Nevada in United States v. Richmond Mining Co., 40 Fed. 415, have similarly construed the act in question. No adverse construction of the act appears to have been given by any of the federal courts. Nor has the Secretary of the Interior changed his ruling with respect to this feature of the act. The evidence in this case shows that most, if not all, of the land from which the timber was cut was classed as mineral by the miners in that vicinity and in the return of the Surveyor General. The instruction of the trial court with regard to the character of the land and the meaning of the act was not, therefore, in our opinion, open to objection.

It is further assigned as error that the court refused to instruct the jury that, even though the lands might have been mineral lands within the meaning of the act of Congress, if the cutting and removal of the timber therefrom was not done in compliance with the rules and regulations of the Secretary of the Interior governing such cutting and removal, such acts would be unlawful; and that it was necessary for the defendant in error, in order to justify the cutting and removal of the timber from the land in question, to show by a preponderance of evidence that it was done in full compliance with said rules and regulations. The act is specific in making the privilege of taking timber from the public domain for mining purposes subject to "such rules and regulations as the Secretary of the Interior may prescribe for the protection of the timber and of the undergrowth upon such land." The Secretary of the Interior has prescribed rules governing such taking of timber, and it is necessary, under the act, to show that timber was taken in accordance with the requirements of such rules as to show that it was taken from land of the character described in the act. It was, therefore, necessary for the defendant in error, the United States having established their title to the land in question, and the fact that the timber was taken therefrom, to show that the timber was taken for the purposes prescribed by the act, and in the manner directed in the rules and regulations of the Secretary of the Interior. There is no evidence in the record upon that subject. An instruction that such evidence was necessary was a proper one to give to the jury, and the United States was entitled to an instruction of that character. The court, in this connection, gave the following instruction:

"The law provides especially that the Secretary of the Interior may establish rules for the regulation of the cutting of timber, and especially as to the undergrowth. It is not always that rules established by the department under the law are valid rules. Rules established by the department must be in harmony with the law itself. There is one rule here which provides for the cutting of the undergrowth and the preserving of the undergrowth. This

comes clearly within the law, and there are some other rules there which I think are within the purview of the act. Some may not be. Now, there is no evidence here to show whether any of these rules were complied with or not, as I recollect; but you must be the judges of that. If there is no evidence whatever that those rules were complied with, then it results that they have not followed this law of Congress strictly. Those rules should have been complied with; but if you find that they have not complied with the rules, that does not authorize you, in my opinion, to assess the damages as in willful trespass. The most that can be done, if you find they acted in good faith in all other respects, would simply be to find the value as innocent trespassers. It would not go beyond that."

If it be contended that this instruction covered, in effect, that requested by the United States, then the verdict was against the instruction, and should have been set aside by the court.

The judgment of the Circuit Court is reversed, with instructions to grant a new trial.