### UNITED STATES v. ROSSI et al.

(Circuit Court of Appeals, Ninth Circuit. October 3, 1904.)

No. 1,039.

1. PUBLIC MINERAL LANDS—RIGHT TO CUT TIMBER—EVIDENCE OF MINERAL CHARACTER.

In an action by the United States to recover for timber cut from public lands, where the defense was that the cutting was justified under Act June 3, 1878, c. 150, 20 Stat. 88 [U. S. Comp. St. 1901, p. 1528], permitting the cutting of timber from mineral lands for certain purposes, evidence was properly admitted to show the mineral character of other lands in the same vicinity, as well as of those from which the timber was taken, as tending to show the extent of the mineral district.

2. APPEAL—REVIEW OF INSTRUCTIONS—SUFFICIENCY OF EXCEPTIONS.

A general exception to the charge given by the court to the jury, which does not conform to rule 10 of the Circuit Court of Appeals (90 Fed. cxlv, 31 C. C. A. cxlv), cannot be considered on appeal if any part of the charge states the law correctly.

3. PUBLIC MINERAL LANDS—RIGHT TO CUT TIMBER—DEPARTMENT REGULATIONS.

Under Act June 3, 1878, c. 150, § 1, 20 Stat. 88 [U. S. Comp. St. 1901, p. 1528], which authorizes all citizens and other persons bona fide residents of certain states and territories and all other mineral districts to cut and remove timber from mineral lands for building, agricultural, mining, or other domestic purposes, the fact that timber so cut is manufactured into lumber and sold as an article of merchandise, to be used in the state where it is cut, does not render such cutting unlawful, nor can it be made so by a regulation of the Secretary of the Interior, promulgated under the power given him by the act to prescribe rules and regulations "for the protection of the timber and of the undergrowth growing upon said lands and for other purposes," such rules and regulations being intended merely to furnish detailed instructions as to the manner of taking the timber to prevent waste and unnecessary destruction.

In Error to the Circuit Court of the United States for the Central Division of the District of Idaho.

This was an action brought by the United States in the United States Circuit Court for the District of Idaho to recover the sum of $155,760, the alleged value of 7,778,000 feet of lumber claimed by the United States to have been unlawfully cut from the public domain by the defendants in error in the years 1899, 1900, 1901, 1902, and 1903, manufactured by them into lumber, and converted to their own use. Judgment is also asked for the sum of $136, expended in the investigation of the trespass. The defendants in error admitted that they were carrying on business in the vicinity of Boise, Idaho, as

manufacturers and dealers in lumber, during the years mentioned, and that they did enter upon the lands described in the complaint, belonging to the United States, and cut timber therefrom. But they alleged, in justification of their action, that the land from which the timber was cut and taken was mineral land, not subject to entry for other purposes under the laws of the United States; that the lumber manufactured therefrom was sold for domestic, agricultural, mining, and building uses in the vicinity of Boise City, and within the general district and state wherein the timber was cut; that no portion thereof was exported from the state; that in the cutting and removing of the timber in question full compliance had been made with the rules and regulations of the Secretary of the Interior then in force; that because of the above-mentioned facts the defendants in error were licensed and privileged to cut and remove the timber in question by the act of Congress of June 3, 1878, c. 150, 20 Stat. 88 [U. S. Comp. St. 1901, p. 1528], entitled "An act entitling the citizens of Colorado, Nevada, and the territories to fell and remove timber on the public lands for mining and domestic purposes." A verdict was rendered for the defendants in error, and judgment entered thereon. The United States brings the case to this court upon writ of error.

Marsden C. Burch and R. V. Cozier, U. S. Attys.

Fremont Wood and W. E. Borah, for defendants in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge (after stating the facts). The assignments of error relate to the action of the trial court in three particulars, mainly: (1) In admitting certain evidence as to the character of the land in question; (2) error in instructing the jury; and (3) in refusing to give certain instructions requested by the United States Attorney. The evidence objected to consisted of the testimony of one W. C. Tatro to the effect that between the years 1870 and 1882 he furnished supplies to miners along Fifer creek, one of the locations mentioned in the complaint from which timber was cut; also certified copies of mining locations on another of the creeks specified in the complaint, filed in 1899, 1900, 1901, and 1903, and assay certificates of rock taken from land a mile and a half distant from the land upon which the timber in question was cut. It is argued that this testimony concerned land too far distant from the land in suit to be material. The court admitted it as showing the extent of the mineral district, and permitted a full examination as to the value of the mineral deposit in that region, how long mining had continued, etc., giving an opportunity to thoroughly inform the jury as to the relative value of the land for mineral or timber. We find nothing prejudicial in the admission of this testimony.

The next objection is to the instruction of the court as to what constituted mineral land and what constituted nonmineral land under the act of Congress of June 3, 1878, c. 150, 20 Stat. 88 [U. S. Comp. St. 1901, p. 1528]. The instructions covered a number of legal propositions involved in these questions. The instructions were as follows:

"Shortly after the passage of the law (Act June 3, 1878), when the circumstances under which it was enacted and when the objects which Congress had in view were better understood than now, Secretary of the Interior Teller, who was familiar with the entire subject, in 1882, in his instructions, said: 'Where the lands are situated in districts of country that are mountainous, interspersed with gulches and narrow valleys, and minerals are known to exist at different points therein, such lands, in the absence of proof to the contrary, will be held to be mineral in character; but when there are extensive

valleys, plains, or mountain ranges and no known mineral exists the land may be considered and treated as nonmineral.' The views of the present secretary, as I understand from his rules issued July 18, 1900, are that the use of timber must be limited to that ground only which can be entered as mining ground under the existing mining laws; that is, to such as is located, or can be, as mining claims. I therefore instruct you that the law includes as mineral lands not only those tracts in which mineral has actually been discovered, and which has been or can be legally located as mining locations, but also all other lands lying in reasonably close proximity to, or in the general neighborhood of, such tracts, and all such neighboring lands as have the general characteristics of mining lands, even if mineral has not been actually discovered therein. In this connection you must bear in mind that, as a rule, the land in a mineral district and in the neigborhood of mines is of such hilly, broken character that it is utterly useless for agricultural or other purposes than mining and for the timber growing upon it, and, as Congress is presumed to have known this fact, it is presumable that it intended to include all such lands under the designation of mineral lands, and with a view of granting the use of the timber thereon, as stated.

"Much has been said as to the quantity of mineral that must be found in ground to constitute it mineral land. The laws themselves fix no limits. They do not even say that it must be more valuable for mineral than for other purposes. It is therefore a subject for conjecture; one upon which opinions may and do differ. But I feel justified in saying to you that ground containing only a trace of mineral—a color—or containing it in such small quantities that a miner would not expect it ever to prove profitable, cannot be held mineral land; but when it contains sufficient to encourage the miner to claim and locate it in good faith as mining ground, and to work and develop it in the reasonable expectation of finding paying quantities, even if it never proves valuable, it is, within the law, mineral land. The question may arise, how are we to know the miners' opinions on these questions? My answer is, by his actions; by what he does, whether or not he located the ground and continues to occupy it and develop it. I may add in this connection that an occasional location here and there over a country, which is not developed and not worked, is not such evidence as constitutes the entire country a mineral district; but the mining operations carried on must be such as to indicate that those who do locate claims and who carry on the work have faith in the country. I mean by that that you cannot make the mere appearance of mineral in a country the excuse for claiming the whole country to be mineral. There must be something substantial back of it in order to justify the claim that a country is mineral. Now, in this particular case you must judge of the country by what has been produced there, by what has been done, and from all that conclude whether or not the men who are engaged in mining in good faith look upon that as a mineral country. I do not know any better rule or test than the judgment of men who are engaged in mining. If that class of men deem a country a mineral country, and show it by their acts and works, it justifies us in concluding that it is a mineral country; and in this case you must reach your own conclusions from the testimony placed before you, showing how the country has been considered, how it has been operated, and by what has been done in it."

The objection to these instructions is based upon the following exception:

"To each and all of these instructions given by the court to the jury the counsel for the plaintiff fully excepted, which exceptions were by the court allowed."

Rule 10 of this court (90 Fed. cxlv, 31 C. C. A. cxlv) provides that:

"The judges of the Circuit and District Courts shall not allow any bill of exceptions which shall contain the charge of the court at large to the jury in trials at common law upon any general exception to the whole of such charge. But the party excepting shall be required to state distinctly the several matters of law in such charge to which he excepts, and those matters of law, and those only, shall be inserted in the bill of exceptions and allowed by the court."

We think the general exception taken by counsel for the plaintiff to the charge of the court in this case cannot be considered if any part of the charge states the law correctly. The exception should have pointed out to the court the precise part of the charge that was objected to. The charge, as a whole, is substantially in accord with the views of this court as expressed in the case of the United States v. Basic Co., 121 Fed. 504, 57 C. C. A. 624.

The remaining assignments of error relate to the refusal of the court to instruct the jury that the defendants in error acted unlawfully in cutting and removing the timber and manufacturing the same into lumber for the purpose of sale and traffic out of the district where cut, in that such acts were in violation of the rules and regulations of the Secretary of the Interior. The act of June 3, 1878, c. 150, 20 Stat. 88 [U. S. Comp. St. 1901, p. 1528], provides, in section 1 thereof, that:

"All citizens of the United States and other persons bona fide residents of the state of Colorado or Nevada or either of the territories of New Mexico, Arizona, Utah, Wyoming, Dakota, Idaho, or Montana, and all other mineral districts of the United States, shall be and are hereby authorized and permitted to fell and remove for building, agricultural, mining, or other domestic purposes any timber or other trees growing or being on the public lands, said lands being mineral and not subject to entry under existing laws of the United States except for mineral entry in either of said states, territories, or other districts of which such citizens or persons may be at the time bona fide residents, subject to such rules and regulations as the Secretary of the Interior may prescribe for the protection of the timber and of the undergrowth growing upon said lands and for other purposes: provided, that the provisions of this act are not to extend to railway corporations."

This act was passed, according to the views of Secretary Teller, of the Interior Department, expressed in 1 L. D. 607, to establish by positive enactment a right claimed and exercised by lumbermen for a period of about 30 years without interference on the part of the government—the right to appropriate the timber on government lands, manufacture it into lumber, and furnish it to the millmen, the miners, the farmers, and other inhabitants of the district who could not or did not wish to do the actual cutting and manufacturing for themselves individually. He further said:

"The great object of the governmental supervision of the cutting of timber in those states and territories ought not to be to compel payment for timber so cut, but to prevent unnecessary waste, the cutting of the small trees under the size prescribed by the department, and to prevent waste by fires and other means."

The rules and regulations of the Secretary of the Interior in force until February 15, 1900, were in accord with these views, permitting owners of sawmills to cut the timber and manufacture it into lumber for sale, under the requirement that it be sold to citizens of the state or territory wherein it was growing, and for "building, agricultural, mining, and other domestic purposes." The intention of Congress in enacting this law was to enable settlers in the regions where timber is scarce to utilize it for domestic and mining purposes, and especially to develop the mineral resources of the rough, mountainous districts, where agricultural pursuits could not be profitably followed. Whether or not this policy should be continued to permit the carrying on of an extensive business in the manufacture and sale of lumber, not only to

the miners, but for all the uses of the cities which may grow up by reason of the mining industry, and without compensation to the government for the timber required for such purposes, may reasonably be questioned. But until Congress closes the door which was so widely opened by the passage of this act, or limits its benefits to some specified amount or degree, the courts must continue to give effect to its provisions.

It is true that the rules and regulations of the Secretary of the Interior now in force, and which have been in operation since February 15, 1900, declare, in rule 5, that:

"No timber is permitted to be felled or removed for purposes of sale or traffic, or to manufacture the same into lumber or other timber product as an article of merchandise, or for any other use whatsoever, except as defined in section 4 of these rules and regulations."

Section 4 reads:

"The uses for which timber may be felled or removed are limited by the wording of the act to 'building, agricultural, mining, or other domestic purposes.'"

And it is contended by the plaintiff in error that rule 5 is made an integral part of the act by the wording of section 1 thereof, and that the defendants in error have acted unlawfully in removing timber for purposes of sale and manufacturing it into lumber as an article of merchandise, in direct violation of this rule. To uphold this contention would, in effect, permit a modification and alteration of an act of Congress by a department charged merely with the execution of the law in question. The rules and regulations provided by the act to be prescribed by the Secretary of the Interior were intended merely to furnish detailed instructions as to the manner of taking the timber, to prevent waste and unnecessary destruction. The land from which the timber might be taken, the objects for which it might be used, and the persons entitled to take it, were designated by Congress in the act itself. If the working out of this law has not conferred the public benefits intended, but resulted inimicably to the government, the remedy lies with the legislative branch of the government, the power that made the law originally, and not with the executive branch, or the judicial.

We find no error in the action of the court below. The judgment is affirmed.