## ANDERSON et al. v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. February, 1907.)

No. 1,334.

1. PUBLIC LANDS—TIMBER DEPREDATIONS—ACTIONS—EVIDENCE.

Where, in an action to recover for timber alleged to have been wrong-fully cut from the public domain, defendants claimed the right to cut under the mineral land acts, evidence as to the steps a witness had taken to procure certain mineral land outside the area of the lands on which the timber was cut and by what method he intended to work such land was immaterial.

2. SAME—GOOD FAITH—EVIDENCE.

Where it was claimed that defendants B. and A. had unlawfully cut timber sued for from the public domain and sold the same to G., evidence that about the time they made such contract they located a number of placer mining claims, etc., at another point, and then, without doing any work on such claims except the necessary assessment work, pro-ceeded to cut timber from such claims and from adjoining lands without reference to the boundaries thereof, was admissible on the issue of their good faith.

3. SAME.

Where certain of the defendants located unsurveyed government land by scrip, and immediately proceeded to cut timber therefrom and from ad-joining lands without reference to boundary lines, and the timber cut from the adjoining lands exceeded that cut on the land located, it would be presumed that the cutting from such adjoining lands was unlawful.

4. EVIDENCE—SELF-SERVING DECLARATIONS.

Where a contract for cutting timber provided that the logs should be cut from lands owned by defendants B. and A., and the United. States claimed that the timber was, in fact, cut from the unsurveyed public do-main, evidence as to conversations between the contracting parties at the time the contract was executed concerning the particular lands on which the timber was to be cut was inadmissible as self-serving.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, §§ 1063-1075.]

5. PUBLIC LANDS—RIGHT TO CUT TIMBER—MINERAL LANDS—EVIDENCE—EX-PERTS.

Where, in an action by the United States for timber alleged to have been wrongfully cut from the public domain, defendants claimed the right to cut the timber under the mineral land acts, the government was entitled to show by an expert miner that, in his opinion, the ground where the timber was cut was not worth locating for placer mining pur-poses.

6. SAME—DAMAGES.

Where a corporation became the owner of a contract for the delivery of logs which were, in fact, unlawfully cut from the public domain, and the contract, though declaring that the buyer should have title to the

logs when cut, also required the sellers to deliver the logs at a particular point, there was no conversion of the logs by the corporation prior to such delivery so that the court in action to recover for logs wrongfully cut from the public domain properly refused to charge that the measure of damages was the value of the logs on the ground, provided the transaction, so far as the corporation was concerned, was an innocent one.

7. SAME—MINERAL LANDS—INSTRUCTIONS.

Where, in an action to recover for logs wrongfully cut from the public domain, defendants claimed the right to cut under the mineral land acts, instructions that the mere appearance of mineral was not sufficient to constitute the land mineral, but that there must be sufficient mineral to induce mining men of experience to go on the land and take and work it with the expectation of finding mineral, etc., were not erroneous.

8. SAME—LIABILITY OF PURCHASER.

Where defendant corporation purchased timber which had been wrongfully cut from the public domain, the corporation acquired no better title than the sellers, and could not defend an action by the United States to recover the value of the logs on the ground that it was acting in good faith.

In Error to the Circuit Court of the United States for the Central Division of the District of Idaho.

The defendant in error brought an action against the plaintiffs in error charging the unlawful cutting and removal of 2,218,974 feet of timber from the public lands of the United States, and converting the same into saw logs, which were of the value of $8 per thousand feet, and of the total value of $17,751.79. The case was tried before a jury, and a verdict was returned in favor of the defendant in error in the sum of $6,102.18. In the complaint it was alleged that Anderson, Baker, and Sandlin as copartners unlawfully and willfully entered upon certain tracts and parcels of vacant, public, unsurveyed lands of the United States lying on and along both banks of the South Boise river, in what will be, when surveyed, township 3 N., ranges 10 and 11 E., Boise meridian; that the timber so cut was by said copartners converted into saw logs and by them conveyed to a pond near Boise City, Idaho, where they unlawfully and willfully sold and delivered the same to the Page-Mott Lumber Company, Limited, a corporation; that said corporation then and there unlawfully and wrongfully received said logs into its possession and converted the same to its own use, to the damage of the defendant in error in the sum of $17,751.79. The answer of the plaintiffs in error admitted that the United States was the owner of the lands from which the timber was cut, but denied that the cutting was unlawful, and justified the cutting and removal of the timber under the act of Congress approved June 3, 1878, entitled "An act entitling the citizens of Colorado, Nevada, and the Territories to fell and remove timber on the public domain for mining and domestic purposes" (Act June 3, 1878, 20 Stat. 88, c. 150 [U. S. Comp. St. 1901, p. 1528]), and alleged that the said lands upon which such timber was cut were public mineral lands of the United States not subject to entry except for mineral entry; that said timber was cut by the said Baker, Anderson, and Sandlin at the instance and request of the Page-Mott Lumber Company, Limited, for the purpose of manufacturing the same into lumber by said corporation, the lumber to be used for general agricultural, domestic, mining, and building uses in the vicinity of Boise City, Idaho, and that none thereof has been exported or was intended for export from the state of Idaho; that the plaintiffs in error observed all rules and regulations then and there in force and promulgated by the Secretary of the Interior for the protection of timber and undergrowth growing upon said lands, and that the stumpage value of said timber did not exceed the sum of 30 cents per 1,000 feet, board measure. On the trial the contract between Baker, Anderson, and Sandlin, as parties of the first part, and N. H. Goodwin, who was the predecessor in interest of the Page-Mott Lumber Company, Limited, as party of the second part, was admitted in evidence. That contract provided that Baker, Anderson, and Sandlin should cut from 2,500,000 to 3,500,000 feet of merchantable timber (saw logs), and deliver the same to

the said Goodwin at Boise City, Idaho, in the summer of 1904, "the logs to be cut on lands owned by said first parties in the vicinity of the South Boise river, Elmore county, state of Idaho." It further provided that the title of the logs should be in the party of the second part as soon as cut, but payment should be made only for the amount of timber delivered at the pond. (The pond here referred to was at Boise). The contract provided for the payment of $9 per 1,000 feet for the logs. It was shown in the evidence that the Page-Mott Lumber Company became the assignee of Goodwin in the contract. It was also shown that before the commencement of the present action, and while the logs were still upon the bank of the river near where they were cut, an injunction suit was commenced by the United States against Baker, Anderson, and Sandlin to prevent the removal of the logs from the place where they were banked; that prior to the commencement of that suit a special agent of the General Land Office had taken possession of said logs and placed the brand of the United States thereon, and had left a person in charge thereof; and that after the issuance of a restraining order, an additional order was entered by the court permitting the defendants in that suit to remove said logs and convey the same to Boise City, upon giving a bond for their value as fixed by the court, which was done.

S. H. Hays and Fremont Wood, for plaintiffs in error.
N. M. Ruick, U. S. Dist. Atty.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge, after stating the facts, delivered the opinion of the court.

On the trial the plaintiffs in error introduced evidence for the purpose of showing that the land from which the timber was cut was mineral land. The record contains numerous assignments of error relating to the admission and exclusion of evidence upon that branch of the case. It is not necessary to consider them all in detail. It is assigned as error that, after a certain witness had testified that he owned mining claims on Feather river, he was not permitted to tell the jury by what method he proposed to work them, and that, when he had testified about a certain mineral lode on Marsh Creek, objection was sustained to the question: "Did you take any steps or were you taking any steps toward procuring it?" Both these questions related to mining claims entirely outside the area of the lands on which the timber was cut, and, in any view of it, the evidence so excluded was wholly immaterial. The same is true of the exclusion of evidence concerning the extent of the working of the Bonaparte mine. That mine was several miles distant from the lands on which the timber was cut.

A series of assignments of error relate to the admission of evidence as to the cutting of timber by Baker and Anderson prior to the time of the contract which is involved in the present action. It was shown that about the time of making the contract with Goodwin, Baker and Anderson located a number of placer mining claims on the South Fork of Boise River, both above and below Junction bar, and elsewhere within the area of lands on which the timber in question in the present action was cut, and that the timber was removed from these placer claims and the land immediately adjoining the same. It was the theory of the government that the placer mining locations were not made by Baker and Anderson in good faith but as a blind to cover their contemplated timber cutting. As tending to sustain that theory, the court permitted the defendant in error to show the former timber operations

of Baker and Anderson at Long Gulch on and in the vicinity of land on which they had located lieu land scrip, and to show that they had cut a considerable tract of unsurveyed government timber land immediately adjoining the land so located by them. This testimony, the court was careful to say, was admitted only for its bearing upon the question of the good faith of Baker and Anderson, and we think that for that purpose it was admissible. In this connection it is assigned as error that the court refused to instruct the jury, as requested by the plaintiffs in error, that the cutting of timber upon vacant public lands on Long Gulch by Baker and Anderson should not be considered by the jury, unless it was followed by other evidence showing that such cutting was unlawful, and that having refused that instruction, the court proceeded to charge the jury as to the evidence so admitted as follows:

"That evidence was introduced for the purpose of showing that they had located scrip upon certain lands, and then, regardless of the lines of that scrip location, they cut timber upon lands outside of its boundaries, using the location as a blind for the purpose of giving them a license to cut where they pleased. One of the witnesses, Mr. Baker, said he did not know where the lines were. That makes no difference. He was bound by it just the same. It was his duty to know where the lines were, and he had no right to cut until he did know, and if he cut beyond those lines he is just as guilty without knowledge as if he had known. Now, if he cut in bad faith in that instance, you may infer that he cut in bad faith in this. That is the only reason that that evidence was introduced."

Plaintiffs in error contend that there are several laws under which timber may be cut from unsurveyed public lands, that under a railway right of way, for instance, timber may be cut for right of way purposes, and also under the law of June 3, 1878, timber may be cut from mineral lands for general local and domestic purposes, etc., and argue that while if the plaintiffs in error were defending an action for cutting timber from the land in Long Gulch they would be called upon to show their right so to do, the rule does not apply here, because, first, the cutting and removal of timber in Long Gulch could have no bearing upon the issues involved in the present case, and, second, if admissible for any purpose it must be shown that the timber was unlawfully cut. But the plaintiffs in error made no attempt to justify their action under any law, and it having been shown that they cut timber, as much timber, if not more, from adjoining unsurveyed government land as upon the land so located by scrip, the presumption at once attached that the cutting upon the former was unlawful. It was for them to show that it was not. They were in the possession of the facts.

It is contended that the court erred in excluding testimony offered by the plaintiffs in error as to conversations between Baker, Anderson, and Sandlin and Goodwin, at the time of the execution of the contract, concerning the particular lands upon which the timber was to be cut. The contract itself provided that the logs were to be cut on the lands owned by Baker and Anderson. There was no error in excluding the conversations between the parties, since at most they were self-serving, and nothing that was said could excuse a trespass thereafter committed by Baker, Anderson, and Sandlin in cutting timber on public lands. The questions for the jury to determine were whether the logs were

cut on the public lands of the United States, and, if so, whether there was authority from the United States so to do.

It is assigned as error that the court permitted a witness, an expert miner of long experience, to express the opinion that the ground where the timber was cut was not worth locating for placer mining purposes. We find no error in admitting such testimony. One of the issues of the case was whether the land on which the timber was cut was mineral land. The evidence was that Baker and Anderson located between 1,100 and 1,200 acres of land as placer mining claims, in the names of their friends and members of their families, that the land was covered with valuable timber, and that no work was done on these placer claims except the assessment work necessary to hold them. The court in reviewing the testimony alluded to the fact that there was not a paying mine, either placer or quartz, in the whole section of country in the region in which the timber was cut, that the ledge mines had been located and abandoned and thereafter relocated and abandoned again, and that in the last 15 or 20 years there had not been $1,000 worth of ore taken out or shipped from that country, and said:

"There is virtually nobody at work there now. There is not a paying mine, either placer or quartz, in that section of country."

Error is assigned to the refusal of the court to instruct the jury that if they found that the property was converted by the Page-Mott Lumber Company, Limited, at the time when it took title, to wit, as soon as it was converted into saw logs, then the measure of damages is the value of the logs on the ground, provided that the transaction, so far as the corporation was concerned, was an innocent one. This requested instruction was not applicable to the facts. There was no proof that the corporation had converted the logs prior to their delivery. By the contract, the logs were to be delivered at the company's pond at Boise City. It was there that they were delivered, and it was there that they were converted by the corporation. The provision in the contract that the title to the logs "should be in the second party as soon as cut" did not amount to a conversion. There could be no conversion until there was an appropriation to the corporation's own use. Nor does the decision in Wooden-Ware Co. v. United States, 106 U. S. 432, 1 Sup. Ct. 398, 27 L. Ed. 230, sustain a different conclusion. In that case the sale and delivery were coincident. The court held that the right to recover against the vendee was just what it was against his vendor "the moment before he interfered and acquired possession."

But the contention principally relied upon is that the court erred in its instructions to the jury on the general question of what constitutes mineral land within the meaning of the act of June 3, 1878. This court fully considered that question in United States v. Basic Co., 121 Fed. 507, 57 C. C. A. 624, and United States v. Rossi, 133 Fed. 380, 66 C. C. A. 442. But the plaintiff in error contends that the instructions given by the court in the present case were not in harmony with those decisions. On a careful consideration of the charge, we are convinced that the contention cannot be sustained. In those cases we held, it is true, that in determining the right to remove timber from mineral lands it is not necessary to establish the presence of mineral in paying quantities

in the particular land from which timber was cut, but that the presence of adjacent land valuable for mineral may be shown for the purpose of determining the mineral or nonmineral character of the land from which the timber was cut. But the plaintiffs in error complain that the court below in the present case instructed the jury that before they could reasonably find land to be mineral country it must be proven to contain minerals in fact, and that timber could be cut only from lands in mining districts or in a country that was substantially a mining district, which meant that the mining interest must be an important interest. When the whole of the charge is considered, it will be seen that the court did not so instruct. The court said that the mere appearance of mineral, the mere appearance of colors here and there, as in a placer claim, is not sufficient to constitute land mineral; that there must be at least sufficient mineral to induce mining men of experience to go upon the ground and take and work it with the expectation of finding mineral. It should be borne in mind that the instruction was given with reference to a country that had, during a long series of years, been thoroughly explored and prospected. It was not a case of newly discovered mineral country. We do not see that the instructions were inappropriate to the facts.

It is urged that the court charged the jury in substance that the locator of a mining claim must, in order to show the good faith of his location, do more than the assessment work on his claim. But that is not what was said or implied in the instruction. The court did not announce as a rule that the failure to do more than the assessment work was to be taken as evidence of bad faith on the part of the locator, but that the jury, in view of all the facts disclosed in the present case, might take that fact into consideration in determining whether the locations were made in good faith or merely as a blind to cover timber depredations.

It is contended that the court erred in instructing the jury in substance that the Page-Mott Lumber Company cannot protect itself by the defense that it was acting in good faith. But the instruction given was clearly within the authority of the Wooden-Ware Case, in which the court said:

"It is also plain that by purchase from the wrongdoer, defendant did not acquire any better title to the property than his said vendor had. It is not a case where an innocent purchaser can defend himself under that plea. If it were, he would be liable to no damages at all, and no recovery could be had. On the contrary, it is a case to which the doctrine of caveat emptor applies, and hence the right of recovery in plaintiff."

We find no error for which the judgment should be reversed. It is accordingly affirmed.